UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER LEE CRAWFORD,

             Plaintiff,

      v.

T. COMBS, et al.,

             Defendants.

Case No.  17-cv-03089-YGR (PR)

**ORDER GRANTING DEFENDANTS'
RENEWED MOTION FOR SUMMARY
JUDGMENT; AND ADDRESSING ALL
PENDING MOTIONS**

## I.    INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at California State Prison - Sacramento, has filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  The operative complaint in this action is the amended complaint, in which Plaintiff alleges constitutional rights violations at Pelican Bay State Prison ("PBSP") where he was previously incarcerated.  Dkt. 28 at 1-2.[1]

Plaintiff seeks declaratory relief as well as monetary and punitive damages against the following Defendants at PBSP and the California Department of Corrections and Rehabilitation ("CDCR"): CDCR Secretary Scott Kernan; PBSP Sergeant T. Combs; PBSP Captain M. Townsend; and PBSP Correctional Officers C. Oviatt and T. Spradlin.  Dkt. 28 at 1-4; Dkt. 27 at 1.  Specifically, Plaintiff alleged that Defendants Combs, Oviatt, and Townsend "deliberately question[ed] [Plaintiff] in front of other General Population inmates stating do you want to go [to the] [Sensitive Needs Yard ("SNY")[2] were done maliciously and sadistically [sic]."  Dkt. 28 at 1.  Plaintiff further alleged that Defendants Combs and Oviatt "fail[ed] to protect [Plaintiff's] reputation by violating his right for confidentiality" and were "willful[ly] deliberate[ly] indifferen[t] to the plaintiff [sic] safety."  *Id.*

The Court found that, liberally construed, Plaintiff stated a cognizable Eighth Amendment

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] The Sensitive Needs Yard, which is also referred to as the *Special* Needs Yard, is housing for inmates who need to be segregated from the general population due to their safety needs. Combs Decl. ¶ 4.

1    claim that Defendants Combs, Spradlin, Oviatt, and Townsend were deliberately indifferent to

2    Plaintiff's safety needs when they allegedly questioned him in front of other inmates about

3    whether he wanted to be housed in the SNY.  Dkt. 31 at 3.  The Court ordered service on Combs,

4    Spradlin, Oviatt, and Townsend.  *Id.* at 4.  The Court dismissed without prejudice Plaintiff's

5    supervisory liability claim against Defendant Kernan.  *Id.* at 3.  The Court directed the Clerk of the

6    Court to serve the amended complaint and issued a briefing schedule for the served Defendants to

7    file a dispositive motion.  *See id.* at 4-7.

8           Defendants Combs, Spradlin, Oviatt, and Townsend (hereinafter "Defendants") initially

9    filed a motion for summary judgment.  Dkt. 41.  Plaintiff filed three motions for extension of time

10   to file an opposition.  Dkts. 43, 51, 55.  Plaintiff was directed to file his opposition by January 20,

11   2020—after being granted three extensions of time to do so.  *See* Dkt. 56.  Instead, Plaintiff filed a

12   document entitled, "Memorandum of Points and Authorities in Support of Motion for

13   Continuance."  Dkt. 59.  In an Order dated March 4, 2020, the Court construed Plaintiff's

14   aforementioned filing as a request under Federal Rule of Civil Procedure 56(d), and it granted his

15   request.  *See Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987) (discovery motion

16   was sufficient to raise issue of whether plaintiff was entitled to relief under Fed. R. Civ. P.

17   56([d])).[3]  Dkt. 61 at 2-4.  In the same Order, the Court denied Defendants' initial motion for

18   summary judgment "without prejudice to them filing a renewed motion for summary judgment

19   after the parties have conducted discovery."  *Id.* at 2.  Thereafter, Defendants timely served

20   discovery responses to Plaintiff's discovery demands.  *See* June 18, 2020 Lyons Decl. at ¶ 4.

21          On March 19, 2019, Defendants filed the instant renewed motion for summary judgment.

22   Dkt. 72.  They argue that Plaintiff's claims fail because: (1) he failed to administratively exhaust

23   his remedies as to Defendants Townsend and Oviatt; (2) section 1983 liability requires personal

24   participation and there is no evidence Defendants Oviatt and Townsend were involved in the

25   alleged conduct; (3) Defendants were not deliberately indifferent to Plaintiff's safety needs;

26

27          [3] *Garrett* cites to Rule 56(f), the subsection in which the provisions pertaining to a party's
     inability to present facts essential to justify its opposition formerly were set forth; as of December
28   1, 2010, the applicable provision is Rule 56(d).  *See* Fed. R. Civ. P. 56.

United States District Court
Northern District of California

(4) Defendants are entitled to qualified immunity; and (5) Plaintiff is not entitled to punitive damages. *Id.* at 6-8.

Plaintiff opposes the renewed motion for summary judgment. Dkt. 83. Additionally, he has filed additional motions to compel discovery and for appointment of counsel. Dkts. 63, 66, 75.

Defendants filed their reply. Dkts. 87. Additionally, Defendants filed an Administrative Motion to File Under Seal. Dkt. 71.

For the reasons outlined below, the Court GRANTS Defendants' renewed motion for summary judgment and addresses all pending motions below.

## II.   PRELIMINARY ISSUES

### A.   Defendants' Administrative Motion to File Under Seal

On June 1, 2020, Defendants filed under seal Exhibits A, B, C, and D attached to the July 17, 2019 Declaration of W. Reynolds, and they moved under Local Rule 79-5(g) to file the records under seal for ten years from the date the case is closed. *See* Dkt. 71. The Court has reviewed Defendants' Administrative Motion to File Under Seal and the declaration filed in support and, good cause appearing, it GRANTS Defendants' motion.[4] The Court further orders that Exhibits A, B, C, and D attached to the July 17, 2019 Declaration of W. Reynolds shall be maintained under seal and *not* entered individually on the docket until the conclusion of this case and any appellate proceedings, after which time they should be returned to defense counsel upon timely request.

### B.   Plaintiff's Motion to Compel

Plaintiff has filed two additional motions to compel discovery. *See* Dkts. 63, 75. In his March 26, 2020 motion entitled, "Motion for an Order Compelling Discovery," Plaintiff made several discovery demands. Dkt. 63. In their response to the March 26, 2020 motion to compel, Defendants state that they assumed that Plaintiff "may have misinterpreted the Federal Rules of

---

[4] The Court has reviewed the sealed documents submitted in this matter, and in the instant Order it will only cite to *general factual information*, which is not so sensitive that having such information in the public record would endanger Plaintiff.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Civil Procedure and the Court's Discovery Order on how to properly serve and propound

2   discovery."  May 14, 2020 Lyons Decl. ¶ 4.  Thus, Defendants interpreted the March 26, 2020

3   motion to compel as Plaintiff's "attempt to propound and serve his discovery demands on

4   Defendants."  *Id.*  Thus, Defendants "timely served [Plaintiff] with their response to his discovery

5   demands on April 16, 2020 . . . ."  *Id.*; *see also* June 18, 2020 Lyons Decl. ¶ 4, Ex. A.  Because

6   Defendants responded to his discovery demands, Plaintiff's March 26, 2020 motion to compel is

7   DENIED as unnecessary.  Dkt. 63.

8         Meanwhile in his May 29, 2020 motion, entitled, "Motion for an Order Compelling

9   Discovery," Plaintiff again makes several discovery demands, some of which are similar to those

10   in his March 26, 2020 motion.  *See* Dkt. 75.  Defendants oppose the May 29, 2020 motion on the

11   grounds that it is untimely and Plaintiff failed to meet and confer with Defendants prior to filing

12   the motion.  Dkt. 78 at 2-3; June 18, 2020 Lyons Decl. ¶ 2.  The Federal Rules of Civil Procedure

13   provide that a party seeking discovery may move for an order compelling an answer, designation,

14   production, or inspection if, among other things, a party fails to produce documents as requested

15   under Rule 34.  *See* Fed. R. Civ. P. 37(a).  However, only when the parties have a discovery

16   dispute that they cannot resolve among themselves should they ask the Court to intervene in the

17   discovery process.  The Court does not have time or resources to oversee all discovery and

18   therefore requires that the parties present to it only their very specific disagreements.  A plaintiff

19   must first attempt to meet and confer with the defendants by sending them a subsequent letter

20   demanding a response and notifying them of his intention to file a motion to compel.  Here, the

21   record shows that Plaintiff did not serve Defendants with any request for admission nor did he

22   meet and confer with Defendants.  Thus, the Court agrees with Defendants, and it DENIES his

23   May 29, 2020 motion on that ground.

24         Alternatively, Defendants claim that the May 29, 2020 motion should be denied on the

25   merits because they "properly responded or objected to each of [Plaintiff's] requests, even though

26   [Plaintiff] failed to actually serve any discovery requests" on Defendants."  Dkt. 78 at 1-2.  In an

27   abundance of caution, the Court now considers Defendants arguments relating to Plaintiff's

28   discovery requests for production of documents 1 through 19 in his May 29, 2020 motion, as

4

follows:

(1)     Defendants claim they timely provided substantive responses to Plaintiff's requests for production of documents 1, 2, 18, and 19, as demonstrated by their attached discovery responses. *See* June 18, 2020 Lyons Decl., Ex. A. Specifically, Defendants claim they "conducted a diligent search and reasonable inquiry for the documents requested in requests 1 and 18; however, no responsive documents were found." Dkt. 78 at 4. Although request 2 involved an unrelated request for law library rules and regulations, Defendants nevertheless performed a search and produced the requested documents. *See* June 18, 2020 Lyons Decl., Ex. A. Finally, Defendants produced one document responsive to request 19 and provided a privilege log and declaration to support Defendants' official information privilege objection because the two remaining responsive[5] documents could not be disclosed to Plaintiff for safety and security reasons. *See* June 18, 2020 Lyons Decl., Exs. A and B. Thus, the Court DENIES Plaintiff's May 29, 2020 motion to compel as to requests 1, 2, 18, and 19 because the record shows that Defendants have already provided substantive responses and produced documents pertaining to these requests.

(2)     Defendants point out that requests 3-12 pertain solely to non-parties and claims that Plaintiff incorrectly maintains are related to the instant matter. Dkt. 78 at 5. Specifically, these requests for production of documents center on Plaintiff's unrelated allegations from his proposed supplemental complaint relating to law library or mail room issues at California State Prison - Sacramento in 2018 and 2019. *See* Dkt. 51-1. As mentioned above, the instant action relates to Plaintiff's alleged safety concerns stemming from an April 10, 2016 incident at PBSP. *See* Dkt. 28. This Court has denied Plaintiff's previous attempt to supplement his complaint to add these unrelated mail room and law library allegations and defendants. *See* Dkt. 54 at 3-4. Therefore, the Court DENIES Plaintiff's May 29, 2020 motion to compel as to requests 3-12 because Defendants properly objected to these requests as not relevant to any party's claims or defenses, and not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (party seeking

---

[5] Defendants have informed the Court that the two privileged documents are the same documents the Defendants have filed under seal with the instant motion. Dkt. 78 at 4 fn. 1.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    discovery of relevant, non-privileged information must show that the discovery sought is

2    proportional to the needs of the case).

3           (3)     And finally, Defendants argue that requests 13-17 are irrelevant because they

4    involve requests for documents related to *other inmates* at PBSP and their private and confidential

5    files and medical records (e.g., rules violation reports, incident reports about these inmates'

6    assaults, and mental health evaluations).  Dkt. 78 at 5-6.  Defendants also point out that "[f]urther

7    demonstrating the irrelevance of these requests, [Plaintiff] requested records from 2018 and 2019,

8    even though the incident at the center of [the instant action] occurred in 2016."  *Id.* at 6.  The

9    Court finds that Defendants properly objected to these requests as not relevant to any party's

10   claims or defenses, and not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

11   Defendants also properly objected to these requests as being in violating of non-party individuals'

12   privacy rights as Defendants are prohibited from disclosing private information to another inmate.

13   *See* Cal. Code Regs. tit. 15, § 3370(b) ("Except by means of valid authorization, subpoena, or

14   court order, no inmate or parolee shall have access to another's case records file, unit health

15   records, or component thereof.")  Therefore, the Court DENIES Plaintiff's May 29, 2020 motion

16   to compel as to requests 13-17.

17          Accordingly, for the reasons outlined above, Plaintiff's May 29, 2020 motion to compel is

18   DENIED both on the merits and based on Plaintiff's failure to meet and confer with Defendants.

19   Dkt. 75.

20          **C.     Plaintiff's Motion for Appointment of Counsel**

21          Plaintiff informs the Court he requests appointment of counsel because his imprisonment

22   "greatly limit[s] his ability to litigate," and he has "limited access to the law library and limited

23   knowledge of the law."  Dkt. 66.

24          The decision to request counsel to represent an indigent litigant under section 1915 is

25   within "the sound discretion of the trial court and is granted only in exceptional circumstances."

26   *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984).  A finding of the "exceptional

27   circumstances" requires an evaluation of the likelihood of the plaintiff's success on the merits and

28   an evaluation of the plaintiff's ability to articulate his claims *pro se* in light of the complexity of

6

1   the legal issues involved.  *See Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103

2   (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*,

3   789 F.2d 1328, 1331 (9th Cir. 1986).  Both of these factors must be viewed together before

4   reaching a decision on a request for counsel under section 1915.  *See id.*

5       Here, the Court finds that Plaintiff has adequately articulated his claims and, as discussed

6   below, Plaintiff is unlikely to succeed on the merits.  Therefore, the Court DENIES Plaintiff's

7   motion for appointment of counsel.  Dkt. 66.

8   **III.   DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

9       The Court now turns to the remaining pending motion in this action: Defendants' renewed

10  motion for summary judgment on the grounds that Plaintiff cannot establish facts that would

11  support his claims of deliberate indifference to his safety needs in violation of his Eighth

12  Amendment rights.  Dkt. 72.

13      Defendants claim that "[t]his case is not about [Plaintiff's] alleged safety concerns of being

14  attacked by other inmates."  *Id.*   Instead, Defendants argue as follows:

15          This case stems from [Plaintiff's] attempts to be re-celled or
            transferred out of [PBSP] because he wanted a new cellmate and was
16          dissatisfied with the prison staff at [PBSP].  The undisputed facts
            reveal that prison staff responded to his concerns and requests
17          reasonably, diligently, and thoroughly.  [PBSP] correctional staff took
            [Plaintiff's] safety concerns seriously by interviewing him,
18          conducting investigations, and placing him in protective custody
            during those investigations.  They retained him in protective custody
19          even after those investigations suggested his safety concerns did not
            appear to come from an external source at the prison, but might be
20          relative to his mental health.  With these concerns, staff referred him
            to mental health services to make sure he would be evaluated and
21          placed in appropriate housing and programming.

22  Dkt. 72 at 7.

23      As mentioned above, Plaintiff has alleged in his amended complaint that Defendants

24  Combs, Oviatt, and Townsend "deliberately question[ed] [Plaintiff] in front of other General

25  Population inmates stating do you want to go [to the SNY] were done maliciously and sadistically

26  [sic]."  Dkt. 28 at 1.  The Court found that Plaintiff's allegations state a cognizable Eighth

27  Amendment claim against Defendants.  Dkt. 31 at 3.  However, in the instant renewed motion,

28  Defendants argue that Plaintiff's claim fails because: (1) Plaintiff failed to exhaust administrative

United States District Court
Northern District of California

United States District Court
Northern District of California

1   remedies under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), as to his Eighth

2   Amendment claims against Defendants Townsend and Oviatt; (2) Section 1983 liability requires

3   personal participation, and there is no evidence Defendants Oviatt and Townsend were involved in

4   the alleged conduct; (3) Defendants were not deliberately indifferent to Plaintiff's safety needs;

5   (4) Defendants are entitled to qualified immunity; and (5) Plaintiff is not entitled to punitive

6   damages.  Dkt. 72 at 8.

7       **A.   Factual Background[6]**

8           **1.   The Parties**

9       At the time of the events set forth in his amended complaint, Plaintiff was an inmate

10  housed in PBSP.  *See* Dkt. 28 at 1-2; *see also* Dkt. 1 at 5.

11      Defendants Oviatt and Spradlin were correctional officers, Defendant Combs was a

12  sergeant[7], and Defendant Townsend was a captain[8] at PBSP.  Oviatt Decl. ¶ 1.; Spradlin Decl. ¶ 1.;

13  Combs Decl. ¶ 1.; Townsend Decl. ¶ 1.

14          **2.   Plaintiff's Version**

15      The following summary of Plaintiff's claims is taken from the Court's January 14, 2019

16  service order, which states as follows:

17      In the caption of his amended complaint, Plaintiff makes reference to a certain grievance,

18  log no. PBSP 16-1700, in which he allegedly exhausted his administrative remedies as to his

19  claims in this action.  *See* Dkt. 21-3 at 79-96 (Pl.'s Ex. N-5 - log no. PBSP 16-1700).  However,

20  upon reviewing log no. PBSP 16-1700, the Court notes that grievance was an appeal of the

21  cancelation of another grievance, log no. PBSP 16-1605, which is the actual grievance that

22

23      ---

[6] This Order contains a few acronyms.  Here, in one place, they are:

24
25      | | |
        |---|---|
        | ASU | Administrative Segregation Unit |
        | CDCR | California Department of Corrections and Rehabilitation |
        | PBSP | Pelican Bay State Prison |
        | SNY | Sensitive Needs Yard (also known as Special Needs Yard) |

26

27  [7] Defendant Combs is currently a Lieutenant at PBSP.  Combs Decl. ¶ 1.

28  [8] Defendant Townsend has since retired.  Townsend Decl. ¶ 1.

8

contains the same allegations as the instant action.  *See id.* at 82, 84; *see also id.* at 89-94 (Pl.'s Ex. N-5 - log no. PBSP 16-1605).  The record shows that log no. PBSP 16-1605 was "cancelled because it was construed as a duplicate of an earlier grievance, log no. PBSP 16-00728[9]."  *See id.* at 89, 91; *see also* Dkt. 21-3 at 1-19 (Pl.'s Ex. N-1 - log no. PBSP 16-00728).  Therefore, the Court has reviewed these related grievances as well as the amended complaint in order to determine the basis of his claims in this action.

Plaintiff's claims arise from Defendants' alleged deliberate indifference to his safety needs stemming from an incident on April 13, 2016 in which Defendants Combs and Spradlin were interviewing Plaintiff relating to "his alleged safety concerns" when they "deliberately forced Plaintiff out of his cell" and asked him in front of other inmates whether he wanted to be housed in the SNY.  Dkt. 28 at 1-2; Dkt. 27 at 2-3; Dkt. 21-3 at 93 (Pl.'s Ex. N-5).  Plaintiff claims this "allow[ed] other inmates to think [he] snitched on inmates [in] the A-facility [and] plac[ed] him . . . in jeopardy of being assaulted by general population inmates."  Dkt. 27 at 3.  In his amended complaint, Plaintiff also alleges that Defendants Oviatt and Townsend took part in "conspiracies to entrap[] [him] [by] deliberately questioning him in front of other general population inmates" regarding his desire to be housed in the SNY.  Dkt. 28 at 1.

### 3. Defendants' Version

#### a. Plaintiff's March 28, 2016 Safety Concerns

Plaintiff claimed that on March 28, 2016, he asked to speak with a sergeant after he refused to take his prescribed medicine.  Townsend Decl. ¶ 4, Ex. A.  He claimed he spoke to "(Sgt.) Schrag and a female (Sgt.) . . . her name is unknown."  *Id.*  Plaintiff alleged that he told the sergeants, "I can't program on A-yard, because unknown inmates want me to move out of A3, and further wants me off [sic] the yard."  *Id.*  Plaintiff claimed that inmates on A-yard saw him talking to these two sergeants and called him a "snitch."  *Id.*  However, Plaintiff also testified at his deposition that the true reason he asked to speak with a sergeant that day was because he wanted

---

[9] Upon reviewing log no. PBSP 16-00728, the Court notes the claims raised in that grievance relate to a March 28, 2016 incident involving PBSP Sergeant J. Schrag's refusal to remove Plaintiff from Facility A even though Plaintiff claimed his life was in danger.  *See* Dkt. 23-3 at 3, 7, 9.

United States District Court
Northern District of California

1    to get rid of his cellmate, with whom he was incompatible, but did not have any safety concerns

2    about his cellmate.  May 29, 2020 Lyons Decl. ¶ 3, Ex. A at 14-16, 21-24.

3          On or around April 3, 2016, Plaintiff submitted an inmate appeal, assigned Log No. PBSP-

4    16-00728 complaining of this exchange with Sergeant Schrag.  Townsend Decl. ¶ 4, Ex. A.  The

5    appeal was accepted at the first level of review, and Defendant Townsend, as the Appeals

6    Coordinator, interviewed Plaintiff on May 17, 2016 about his concerns.  Townsend Decl. ¶ 4.

7    During the interview, Plaintiff told Defendant Townsend that his appeal stands and that he had no

8    new information to add.  *Id.*  This Appeal was reviewed at the First Level but was cancelled at the

9    Second Level Review on April 20, 2016 under the CDCR Operations Manual Section 54100.25.1

10   because Plaintiff refused to sign the CDCR Form 1858 Rights and Responsibility Statement.

11   Plaintiff did not challenge this cancellation through the appeals process.  Royal Decl.  ¶¶ 11-12;

12   Townsend Decl. ¶ 5, Ex. C.

13                    **b.  Plaintiff's March 31, 2016 Placement in ASU**

14         As a result of Plaintiff's self-expressed safety concerns, he was moved on March 31, 2016

15   to the Administrative Segregation Unit ("ASU"), a protective custody housing unit in PBSP,

16   which prison staff investigated his safety concerns.  Combs Decl. ¶ 6.

17         When an inmate's presence in an institution's general population presents an immediate

18   threat to the safety of the inmate or others, endangers institution security, or jeopardizes the

19   integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall

20   be immediately removed from general population and placed in ASU.  Cal. Code Regs. tit. 15,

21   § 3335 (2016).

22         Plaintiff remained in ASU with single-cell status until he transferred out of PBSP on

23   September 22, 2016.  July 16, 2019 Reynolds Decl. ¶ 3, Ex. A.  When an inmate does not have a

24   cellmate in ASU, that inmate will never be in contact with other inmates: he lives alone in a cell,

25   goes to yard for exercise in his own enclosed area, is escorted by officers when he is not in his

26   cell, and showers in a single-person shower.  Combs Decl. ¶ 6.  This means that throughout

27   Plaintiff's time at PBSP from March 31, 2016 onward, he remained in single-cell protective

28   custody, and was never placed within physical reach of another inmate or returned to general

United States District Court
Northern District of California

10

1   population.  *Id.*

2         **c.   Defendant Combs's April 2016 Interview of Plaintiff in ASU**

3         As part of the investigation into Plaintiff's self-expressed safety concerns in ASU,

4   Defendant Combs interviewed him on April 10, 2016.  Combs Decl. ¶ 7.  Plaintiff testified that

5   this interview is the subject incident that forms the basis of his operative complaint.  May 29, 2020

6   Lyons Decl. ¶ 3, Ex. A at 56.  During this interview, Plaintiff expressed vague safety concerns, but

7   he refused to be placed in the SNY.  Combs Decl. ¶¶ 7-8, Ex. A.  After interviewing Plaintiff,

8   Defendant Combs concluded that Plaintiff's safety concerns were unsubstantiated, and he referred

9   Plaintiff for a mental health evaluation.  Combs Decl. ¶ 8, Ex. B.

10        Pursuant to CDCR policy, Defendant Combs submitted a Mental Health Referral Chrono

11  so that Plaintiff's mental health status would be evaluated by mental health professionals and

12  considered for Plaintiff's future housing and program placement.  CDCR Dep't Operations

13  Manual Section 52080.32 (2016); Combs Decl. ¶ 8, Ex. B.

14        **d.   602 Inmate Appeal Regarding April 2016 Interview**

15        On or around April 27, 2016, Plaintiff filed a CDCR 602 Inmate/Parolee Appeal, log

16  number PBSP-16-016054.  Royal Decl. ¶ 9, Ex. B.  In it, Plaintiff complained of an incident that

17  occurred on April 10, 2016 when Defendants Combs and Spradlin came to Plaintiff's cell in ASU

18  and allegedly asked him "in earshot" of other ASU inmates whether Plaintiff wanted to go to the

19  SNY.  Royal Decl. ¶ 9, Ex. B.  After Plaintiff refused SNY placement, Defendants Combs and

20  Spradlin allegedly returned Plaintiff to his cell.  Royal Decl. ¶ 9, Ex. B.  In his deposition, Plaintiff

21  concedes that this appeal reflects the same conversation at issue in the instant litigation.  May 29,

22  2020 Lyons Decl. ¶ 3, Ex. A at 36, 56-60.

23      **B.   Legal Standard for Summary Judgment**

24        Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate

25  that there is "no genuine issue as to any material fact and that the moving party is entitled to

26  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the

27  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

28  material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

United States District Court  
Northern District of California

11

1    the nonmoving party.  *Id.*

2         The party moving for summary judgment bears the initial burden of identifying those

3    portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

4    of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will

5    have the burden of proof on an issue at trial, it must demonstrate affirmatively that no reasonable

6    trier of fact could find other than for the moving party.  But on an issue for which the opposing

7    party will have the burden of proof at trial, the moving party need only point out "that there is an

8    absence of evidence to support the nonmoving party's case."  *Id.* at 325.

9         Once the moving party meets its initial burden, the nonmoving party must go beyond the

10   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

11   genuine issue for trial." Fed. R. Civ. P. 56(e).  The court is concerned only with disputes over

12   material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."

13   *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine

14   issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party

15   has the burden of identifying, with reasonable particularity, the evidence that precludes summary

16   judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to

17   a judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

18        For purposes of summary judgment, the court must view the evidence in the light most

19   favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

20   evidence produced by the nonmoving party, the court must assume the truth of the evidence

21   submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

22        A district court may consider only admissible evidence in ruling on a motion for summary

23   judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

24        In support of their dispositive motion, Defendants have presented their own declarations

25   and supporting exhibits, as well as declarations and supporting exhibits from the following: PBSP

26   Office Technician C. Gotfried; Defendants' attorney Deputy Attorney General Le-Mai D. Lyons

27   (dated May 29, 2020); PBSP Litigation Coordinator W. Reynolds (dated July 16, 2019); and PBSP

28   Appeals Coordinator K. Royal.  Dkts. 72-3 – 72-10.

Meanwhile, Plaintiff filed a verified amended complaint. Dkt. 28. However, the Court will not consider Plaintiff's unverified opposition[10] because he failed to sign it under penalty of perjury. *See* Dkt. 83. The Court may treat the allegations in the verified amended complaint as an opposing affidavit to the extent such allegations are based on Plaintiff's personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, he stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). However, "self-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001). Plaintiff's deposition testimony, as submitted by Defendants, will also be considered. *See* May 29, 2020 Lyons Decl., Ex. A.

**C.     Analysis of Deliberate Indifference Claim Against Defendants**

Plaintiff alleges that all named Defendants were deliberately indifferent to his safety needs by inquiring about his status as a SNY inmate in front of other inmates. Dkt. 28 at 1.

Defendants argue that they are entitled to qualified immunity because no reasonable officer would have known that interviewing him while he was in protective custody in ASU with single-cell status and asking him if he wanted to go to the SNY would have put him at substantial risk of serious harm, even if the interview was done within earshot of other inmates. Dkt. 72 at 23. Defendants point out that Plaintiff "was never at risk of serious harm because he was already in protective custody and would not have been accessible by another inmate." *Id.* Defendants further argue that "[t]he fact that he was neither assaulted nor in fear of being assaulted by other

---

[10]  The Court notes that Plaintiff's opposition brief as filed is a total of seventy pages long. Dkt. 83. However, it appears that every other (even) page in the filing is an unrelated page of miscellaneous medical records. *See id.* Even upon reviewing those unrelated pages, the Court notes that no verification exists to indicate that his opposition was signed under penalty of perjury. *See id.* In any event, the bulk of the opposition discusses non-party individuals and various unrelated allegations, *see id.*, which the Court has already ruled that Plaintiff may not supplement or add to the operative complaint in this action, *see* Dkt. 54 at 2-4.

United States District Court
Northern District of California

1    inmates after the subject interview further supports this conclusion." *Id.*

2            The defense of qualified immunity protects government officials "from liability for civil

3    damages insofar as their conduct does not violate clearly established statutory or constitutional

4    rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

5    (1982).  To determine whether an official is entitled to qualified immunity, the court must decide

6    whether the facts alleged show the official's conduct violated a constitutional right; and, if so,

7    whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

8    confronted.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555

9    U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceeds in a

10   particular sequence).  "If no constitutional right would have been violated were the allegations

11   established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*,

12   533 U.S. at 201.

13           The threshold question in qualified immunity analysis is: "Taken in the light most

14   favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated

15   a constitutional right?" *Id.*  A court considering a claim of qualified immunity must determine

16   whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such

17   right was "clearly established." *Pearson*, 555 U.S. at 236-37.  Where there is no clearly

18   established law that certain conduct constitutes a constitutional violation, the defendant cannot be

19   on notice that such conduct is unlawful.  *Rodis v. City and County of S.F.*, 558 F.3d 964, 970 (9th

20   Cir. 2009).  The relevant, dispositive inquiry in determining whether a right is clearly established

21   is whether it would be clear to a reasonable defendant that his conduct was unlawful in the

22   situation he confronted.  *Saucier*, 533 U.S. at 202.

23           The Eighth Amendment requires that prison officials take reasonable measures to

24   guarantee the safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular,

25   prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id.*

26   at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036,

27   1040 (9th Cir. 2005); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980).  The failure of

28   prison officials to protect inmates from attacks by other inmates or from dangerous conditions at

United States District Court
Northern District of California

14

the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id*. at 837.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials only where the officials acted with "deliberate indifference" to the threat of serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody), or by physical conditions at the prison. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer*, 511 U.S. at 837. However, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842; *see also Lemire v. Cal. Dept. Corrections & Rehabilitation*, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for deliberate indifference: plaintiff must show, first, that risk was obvious or provide other evidence that prison officials were aware of the substantial risk to the inmates' safety, and second, no reasonable justification for exposing inmates to risk). This is a question of fact. *Farmer*, 511 U.S. at 842; *see, e.g., Cortez*, at 1050-52 (reversing grant of summary because, when viewed in the light most favorable to plaintiff, sufficient evidence showed (1) that undermanned escort by one prison guard of three mutually hostile, half-restrained, high-security inmates through an isolated passage posed a substantial risk of harm; and (2) that escorting officer was aware of the risk involved); *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (finding no deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that the prison officials responsible for making the prisoner's cell assignment were aware that he faced a substantial risk of harm).

United States District Court
Northern District of California

1

2      A trier of fact may conclude that a prison official knew of a substantial risk from the very

3  fact that the risk was obvious; a plaintiff therefore may meet his burden of showing awareness of a

4  risk by presenting evidence of very obvious and blatant circumstances indicating that the prison

5  official knew the risk existed.  *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an

6  inmate might suffer harm as a result of the repeated denial of meals is obvious").  But while

7  obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's

8  liability must still be based on actual awareness of the risk rather than constructive knowledge.

9  *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).  While a prisoner's failure to give

10  prison officials advance notice of a specific threat is not dispositive with respect to whether prison

11  officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference

12  will not be found where there is no other evidence in the record showing that the defendants knew

13  of facts supporting an inference and drew the inference of substantial risk to the prisoner.

14  *Labatad*, 714 F.3d at 1160-61.

15      Here, as mentioned above, Defendants argue that they are qualifiedly immune because no

16  reasonable official would have known that their actions were unlawful.  Dkt. 72 at 22-24.

17  Defendants also argue that "[Plaintiff's] alleged constitutional right to be free from cruel and

18  unusual punishment in the form of being asked within earshot of other inmates if he wants to go

19  [to the] SNY was not clearly established under the circumstances of this case."  *Id.* at 22.  Thus,

20  Defendants claim that Plaintiff fails to show that Defendant Combs was deliberately indifferent in

21  his actions of asking Plaintiff if he wanted to go to the SNY while they were within earshot of

22  other inmates.  *Id.* at 23.  Moreover, it seems that Defendants are claiming that Defendants

23  Spradlin, Oviatt, and Townsend were not involved in the aforementioned interview by Defendant

24  Combs, which allegedly put Plaintiff at substantial risk of harm.[11]  *See id.*  Instead, Defendants

25  point out that Defendant Spradlin's "sole involvement in this incident was following an order to

26  escort [Plaintiff] out of his ASU cell allegedly to the "hallway rotunda area next to the showers" in

27

28  ───────────────

      [11] In his deposition, Plaintiff concedes that Defendants Oviatt and Townsend were not
  involved in the April 10, 2016 interview.  May 29, 2020 Lyons Decl. ¶ 3, Ex. A at 36, 57-60, 64,
  68-70.

1    ASU in order for Defendant Combs to interview him." *Id.* Furthermore, Defendants argue that

2    "[t]here is no evidence to suggest either [Defendant] Oviatt or [Defendant] Townsend were

3    personally involved with the subject incident." *Id.* Thus, Defendants argue that these facts

4    demonstrate that they are entitled to qualified immunity. *Id.* at 22-24.

5          Even if the Court were to consider Plaintiff's opposition (had it been verified), he asserts

6    the same allegations found in his amended complaint, but he fails to set forth any evidence that

7    Defendants' conduct was sufficiently serious and was done with deliberate indifference to

8    Plaintiff's safety. *See* Dkt. 83.

9          Meanwhile, in his amended complaint, Plaintiff claims in a conclusory fashion that

10   Defendants actions of "deliberately questioning him in front of other General Population inmates

11   stating do you want to go [to the SNY] were done maliciously and sadistically . . . ." Dkt. 28 at 1.

12   Although self-serving affidavits may establish a genuine issue of material fact, they may do so

13   only when "they state facts based on personal knowledge and are not too conclusory." *Rodriguez*,

14   265 F.3d at 902. Here, Plaintiff's allegations in his amended complaint that relate to Defendants'

15   conduct are conclusory assertions and are insufficient to establish a genuine issue of material fact.

16   *See id.* Plaintiff contends that Defendants "refus[ed] to adhere to [Plaintiff's] right to be free from

17   cruel and unusual punishment[] regarding [their] failure to safe guard[] his right to receive

18   confidentiality when [he] is being interviewed regarding his alleged safety concerns . . . ." Dkt. 28

19   at 3. It seems that Plaintiff claims such actions were intentional on Defendants' part. However,

20   such a contention is pure speculation, and not based on Plaintiff's own personal knowledge.

21   Plaintiff's unsupported speculation about Defendants' mental state does not create a triable issue

22   of fact. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001)

23   (plaintiff's belief that defendant acted with an unlawful motive, without supporting evidence, is

24   not cognizable evidence on summary judgment.)

25         After viewing all the evidence submitted, the Court finds that there is no genuine issue of

26   material fact with respect to Plaintiff's claim that Defendants acted with deliberate indifference to

27   his safety. Instead, the evidence shows that Plaintiff had expressed some safety concerns relating

28   to his housing, and Defendants responded to Plaintiff's concerns by escorting him to be

United States District Court
Northern District of California

17

interviewed and interviewing him, in order to determine appropriate housing and programming, given his safety concerns.  And, as the Court has determined above, Plaintiff has failed to create a triable issue of fact that Defendants' aforementioned conduct was sufficiently serious and was done with deliberate indifference to Plaintiff's safety.

In sum, having considered all the evidence submitted, the Court finds the evidence fails to show a violation of Plaintiff's Eighth Amendment rights.  Therefore, Defendants prevail on the first prong of the *Saucier* test.  *See Saucier*, 533 U.S. at 201.  Furthermore, the Court finds that no reasonable officer would have known that Plaintiff faced a substantial risk to his safety based on interviewing him about his desire to go to the SNY.  *Id.* at 202.  Therefore, a reasonable person in Defendants' situation could have believed that their actions did not violate Plaintiff's clearly established constitutional rights.  *Id.*  Accordingly, Defendants are entitled to qualified immunity against Plaintiff's deliberate indifference to safety claim, and their renewed motion for summary judgment is GRANTED based on those grounds.  Dkt. 72.

### D.    Punitive Damages Claim

Finally, the dismissal of Plaintiff's claim for punitive damages is in order, as punitive damages may be awarded in a section 1983 suit only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  There is no indication whatsoever that Defendants' alleged wrongdoing rose to this requisite high level of culpability.  Accordingly, Plaintiff's claim for punitive damages is DISMISSED.

## IV.    CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.    Defendants' Administrative Motion to File Under Seal is GRANTED.  Dkt. 71. Exhibits A, B, C, and D attached to the July 17, 2019 Declaration of W. Reynolds shall be maintained under seal and *not* entered individually on the docket until the conclusion of this case and any appellate proceedings, after which time they should be returned to defense counsel upon timely request.

2.    Plaintiff's March 26, 2020 motion to compel is DENIED as unnecessary because

Defendants chose to respond to his discovery demands.  Dkt. 63.

      3.      Plaintiff's May 29, 2020 motion to compel is DENIED both on the merits and based on Plaintiff's failure to meet and confer with Defendants.  Dkt. 75.

      4.      Plaintiff's motion for appointment of counsel is DENIED.  Dkt. 66.

      5.      Defendants' renewed motion for summary judgment is GRANTED.[12]  Dkt. 72.

      6.      Plaintiff's claim for punitive damages is DISMISSED.

      7.      The Clerk shall terminate all pending motions and close the file.

      8.      This Order terminates Docket Nos. 63, 66, 71, 72, and 75.

      IT IS SO ORDERED.

Dated: September 30, 2020

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[12] The Court's finding that Defendants are entitled to summary judgment based on qualified immunity obviates the need to address Defendants' alternative arguments in their renewed motion for summary judgment, including that Plaintiff's claim fails because he only partially exhausted his administrative remedies.